# Exhibit A

## DECLARATION OF RAMON CASTRO PURSUANT TO 28 U.S.C. § 1746

THE UNDERSIGNED hereby makes this Sworn declaration pursuant to 28 U.S.C. §1746, and under penalty of perjury, states as follows:

1. My name is Ramon Castro. I am fully competent to make this declaration and do so based upon the best of my knowledge, both direct and indirect, of the information stated below, and I am authorized to make the statements and representations herein.

2. I am *sui juris*, of majority age, and I declare, certify, verify and state under penalty of perjury, that the following statements are true and correct to the best of my knowledge, information and belief, based on either personal knowledge or review of relevant documents and records.

3. If called to testify before the Court with regard to the contents of this Sworn Declaration, my testimony will be identical to the contents hereof.

4. I was employed by Sevilla Properties, LLC and Mario Ferro, Jr. (collectively, "Sevilla") as a security guard during the years 2009, 2010, 2011, and 2012.

5. I was hired by Mario Ferro, Sr. who instructed me to work from 4:00 p.m. until 4:00 a.m.

6. As a security guard for Sevilla I worked approximately twelve (12) hours per day, seven (7) days per week.

7. Sevilla paid me $9.00 per hour for each hour I worked as a security guard.

8. For hours I worked in excess of forty (40) per week, Sevilla paid me only $9.00 per hour—not at the proper overtime rate of $13.50 per hour.

9. The location where I worked for Sevilla included space leased by both commercial and residential tenants.

10. As a security guard, I was required by Sevilla to patrol and otherwise secure both the residential and commercial spaces.

11. Sevilla provided an oven and a refrigerator in each residential space at the location where I worked which I believe were manufactured, or contained parts that were manufactured, outside the state of Florida.

12. For the time I worked as a security guard, Sevilla also employed a general manager named Rene, a janitor, and two to three maintenance personnel at the location where I worked.

13. Rene worked in an office at the location and regularly used a phone, computer, and fax machine which I believe were manufactured, or contained parts that were manufactured, outside the state of Florida.

14. The janitor used a mop, a broom, a storage cart, and various cleaning solutions which I believe were manufactured, or contained parts that were manufactured, outside the state of Florida.

15. The maintenance men would use various tools like hammers, screwdrivers, drills, and saws which I believe were manufactured, or contained parts that were manufactured, outside the state of Florida.

16. The commercial tenants leasing space at the location where I worked included a laundry facility, a barber, a jewelry store, a liquor store, a tobacco shop, an insurance agent, and a travel agency.

17. I know that the travel agency sold goods and services related to travel outside the state of Florida, including but not limited to, providing services to customers related to sending money, food, clothes, and shoes to Cuba.

18. I know that the liquor store sold goods that were manufactured outside the state of Florida, including "Ron Abuelo Anejo" rum that was produced in Panama and "Crystal Palace" vodka that was produced in California; and I believe that the jewelry store and tobacco shop also sold goods that were manufactured outside the state of Florida.

19. While working as a security guard, several times per month, Rene would direct me to perform certain tasks including, but not limited to, checking whether tenants had timely vacated their apartments, checking to see whether various lights and fixtures were working properly, checking to see whether non-tenants were using Sevilla's dumpster, and asking tenants to move improperly parked vehicles.

20. While working as a security guard for Sevilla, I did not work for any other companies.

21. While Sevilla did not require me to wear a uniform, have a cell phone, carry a firearm, or use a flashlight, said items were vital to my ability to perform my job responsibilities.

22. A flashlight was important because most of the time I worked as a security guard for Sevilla was at night. The flashlight I used was marked as being made in China.

23. A uniform was important so that people would give me more respect while working as a security guard for Sevilla. The uniform I wore was branded as "Professional Uniform Topbrass" and marked as being made in Mexico.

24. A cell phone was important so that I make calls to proper authorities if necessary, and so that other employees of Sevilla could call me to perform specific tasks, which was done several times per month. The cell phone I used was branded as "Samsung."

**FURTHER DECLARANT SAYETH NOT.**

## VERIFICATION PURSUANT TO FLA. STAT. § 92.525

Under penalties of perjury, I, Ramon Castro, declare that I have read the foregoing and that the facts contained herein are true.

Executed on this 15 day of November, 2013.

_____
Sign name

Ramon F Castro
Print name